# IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

FILED IN OPEN COURT
ORLANDO, FLORIDA

**MAY 0 3 2004**

CLERK, U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

IN RE: The Matter of

**EVERGREEN SECURITY, LTD.,**

    Debtor.

_____/

**Case No.: 01-00533-6B1**

**Chapter 11 Proceeding**


## JOINT PLAN OF REORGANIZATION, AS MODIFIED
## FOR EVERGREEN SECURITY, LTD. SUBMITTED
## BY THE COMMITTEE AND THE CHAPTER 11 TRUSTEE

Counsel for Official Committee
  of Unsecured Creditors
Hans Christian Beyer, Esq.
BUCHANAN INGERSOLL, P.C.
Bank of America Tower
100 S.E. Second Street, Suite 2100
Miami, FL  33131-2150
Telephone: (305) 347-4082
Facsimile:  (305) 347-4080

Counsel for Chapter 11 Trustee
R. Scott Shuker, Esq.
GRONEK & LATHAM, LLP
390 North Orange Avenue, Suite 600
Orlando, FL  32802
Telephone: (407) 481-5800
Facsimile:  (407) 481-5801

Submitted May 3, 2004

1063

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNTIL SUCH TIME AS THE DEBTOR'S DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF IMPAIRED CLAIMS AGAINST AND IMPAIRED EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THIS PLAN.   THE PLAN PROPONENTS RESERVE THE RIGHT TO FILE AN AMENDED OR AN AMENDED AND RESTATED PLAN AND DISCLOSURE STATEMENT FROM TIME TO TIME HEREAFTER. REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING INSTRUCTIONS, THE DEBTOR'S HISTORY, BUSINESS, AND RESULTS OF OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE REORGANIZATION CASE AND THE MEANS OF FUNDING THIS PLAN. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

THIS PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.   PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OF THE DEBTOR SHOULD EVALUATE THIS PLAN IN LIGHT OF THE PURPOSES FOR WHICH IT WAS PREPARED.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE: The Matter of

**EVERGREEN SECURITY, LTD.,**

      Debtor.

Case No.: 01-00533-6B1

**Chapter 11 Proceeding**

_____/

## JOINT PLAN OF REORGANIZATION, AS MODIFIED
## FOR EVERGREEN SECURITY, LTD. SUBMITTED
## BY THE COMMITTEE AND THE CHAPTER 11 TRUSTEE

The Official Committee of Unsecured Creditors (the "Committee") together with

R.W. Cuthill, Jr. as Chapter 11 Trustee (the "Chapter 11 Trustee" and, collectively with

the Committee, the "Proponents") for the bankruptcy case of Evergreen Security, Ltd.

("Evergreen") hereby propose this *Joint Plan of Reorganization for Evergreen Security,*

*Ltd. submitted by the Committee and the Chapter 11 Trustee* (the "Plan" (as further

defined below)), pursuant to Chapter 11 of the United States Code, 11 U.S.C. §101, *et*

*seq.,* (the "Code").

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS

OTHERWISE STATED, ALL STATEMENTS IN THIS PLAN AND IN THE

ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF

THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION

OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS A

PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN UPON SECURED

CREDITORS, UNSECURED CREDITORS, OR HOLDERS OF EQUITY INTERESTS

ARE ATTRIBUTABLE EXCLUSIVELY TO THE PROPONENTS AND NOT TO ANY OTHER PARTY.

THE PLAN PROVIDES FOR RELEASES OF CERTAIN PERSONS WHO ARE PROVIDING CONSIDERATION TO THE ESTATE AND THE LIQUIDATING COMPANY, AS DEFINED BELOW, AS WELL AS INJUNCTIVE RELIEF TO PROTECT SUCH PERSONS.  THE PERSONS SO PROTECTED AND THE SCOPE OF SUCH RELEASES AND INJUNCTIONS ARE SET FORTH IN ARTICLE X OF THE PLAN AND IN THE DISCLOSURE STATEMENT.  IF THE PLAN IS CONFIRMED, ALL PERSONS SPECIFIED IN THESE PROVISIONS OF THE PLAN WILL BE RELEASED FROM THE CLAIMS OF THE DEBTOR, THE LIQUIDATING COMPANY, AND ANY CREDITOR OR OTHER PARTY IN INTEREST IN THIS CASE.

## I.    **INTRODUCTION**

1.    The Debtor is a corporation organized under the laws of the British Virgin Islands which was purportedly in the business of accepting investments from clients and issuing debt instruments with a fixed rate of return until it sought protection under Chapter 11 of the Code on the Petition Date.  The Debtor held itself out to the public as a mutual fund although it did not operate as a traditional mutual fund.  The Debtor's investors, located throughout the world but primarily in the United States, invested over U.S. $180 million through and with the Debtor, usually through one or more financial intermediaries.

2.      By no later than Fall, 2000, the Debtor stopped honoring its contractual commitments to its investors.  By that time, the vast majority of the Debtor's assets constituted loans and massive guaranties of questionable value from companies affiliated with the indirect owner of the Debtor, William J. Zylka.

3.      The Debtor sought protection under Chapter 11 of the Code by filing a voluntary bankruptcy petition on the Petition Date with the Court.  On February 20, 2001, the Office of the United States Trustee appointed the Committee to represent the interests of the body of unsecured creditors in the Case.  The Committee, working with several large creditors of the Debtor and the United States Trustee's Office, obtained orders from the Court freezing the remaining assets of the Debtor in February, 2001, and appointing the Chapter 11 Trustee, as defined below, in March, 2001.  Since that time, the Chapter 11 Trustee has been working to recover Extraordinary Income, as defined below, for the benefit of Evergreen's creditors.  It is the opinion of the Proponents that this Plan represents the next logical step in that Extraordinary Income recovery process.

## II.    RULES OF CONSTRUCTION AND DEFINITIONS

1.      Rules of Construction.

1)      For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or

document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented; (d) if the Plan's description of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular Article or section or subsection of the Plan; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the Exhibits referred to in the Plan shall be deemed incorporated herein by such reference and made a part hereof for all purposes; and (i) the rules of construction set forth in Section 102 of the Code shall apply in the construction of the Plan, to the extent such rules are not inconsistent with any other provision set forth herein.

2.    <u>Definitions</u>.   For the purposes of the Plan the following terms will have the meanings set forth below:

       1)    **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in § 503(b) of the Code, and of a kind referred to in § 507(a)(1) of the Code, including without limitation, the actual, necessary costs and expenses incurred after the commencement after the Chapter 11 case but preserving the estate of Evergreen Security, Ltd. ("Debtor") in operating the business of Debtor, including wages, salaries, or commissions for services, compensation for legal and other

services and reimbursement of expenses awarded under Code §§330(a) or 331, and all fees and charges assessed against Estate under Chapter 123 of Title 28 of the United States Code.

      2)    **Administrative Claims Bar Date** shall mean the date by which all Administrative Claims must be filed with the Court to be allowed.  The administrative Claims Bar Date will be established by the Court as a specific date prior to the Confirmation Date.

      3)    **Allowed Administrative Claim** shall mean any Administrative Claim or any portion of such claim which has been or becomes allowed by Order of the Court.

      4)    **Allowed Amount** shall mean the amount of any Claim which becomes an Allowed Claim either through negotiations with the Debtor or through the entry of a Final Order.

      5)    **Allowed Claim** (or "Allowed Class __ Claim") shall mean either (a) a Claim with respect to which a proof of Claim has been filed with the Court pursuant to Code §501 and Rule 3001 filed within an applicable period of limitation fixed by Rule 3003 or any Order of the Court; (b) a Claim which is deemed filed pursuant to Code §1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared, filed, and amended by the Debtor or the Trustee with the Court pursuant to Code §521(1) and Rule 1007(b) and not listed as disputed, contingent or unliquidated; or (c) a Claim which is deemed an Allowed Claim pursuant to the provisions of the Plan or any Order of the Court.  Unless otherwise provided in the Plan or unless deemed or adjudicated an

Allowed Claim pursuant to the provisions of the Plan or any Order of the Court, an Allowed Claim shall not include any Claim as to which an objection or proceeding challenging the allowance thereof has been interposed by the Debtor, the Trustee, or the Committee within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Court, until such objection or proceeding has been overruled, or dismissed or settled by entry of a Final Order.  Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Order of the Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim arising subsequent to the Petition Date.

6)   **Allowed Priority Tax Claim** shall mean a Priority Claim under Code §507(a)(viii), to the extent such Priority Claim is or performs an Allowed Claim.

7)   **Allowed Secured Claim** shall mean either (1) a Secured Claim to the extent that neither the security interest underlying the Claim is challenged nor the amount of the Secured Claim is challenged as provided for herein or (2) a Secured Claim which has become an Allowed Claim by order of the Court.

8)   **Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

9)   **Bankruptcy Estate** shall mean the estate created pursuant to Code §541 by the commencement of Evergreen's Chapter 11 case and shall include all property of the Estate as set forth in the Code.  For all periods after the Confirmation Date, the term Bankruptcy Estate as used herein shall be deemed to refer to the

Extraordinary Income Account maintained for the benefit of the Holders of Allowed Class 5 Claims.

10)    **Bar Date** shall mean the date fixed by Order of the Court as the last date for the filing of Claims in this Case.

11)    **Business Day** shall mean a day other than a Saturday or Sunday or any other day on which the majority of commercial banks located in Orlando, Florida, are required or authorized to close.

12)    **Case** shall mean the bankruptcy case of Evergreen pending before the Court pursuant to Title 11, Chapter 11 of the United States Code under Case Number 01-00533-6B1.

13)    **Cash** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits, or other similar items.

14)    **Causes of Action** shall mean any and all of the Debtor's, the Bankruptcy Estate's, the President's, or the Chapter 11 Trustee's actions, claims, demands, rights, defenses, counterclaims, suits, and causes of action, whether now known or unknown, in law, equity, or otherwise, including, without limitation, all actions currently pending which were filed by Cuthill or the Bankruptcy Estate and all avoidance actions and rights to recover transfers voidable or recoverable under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, and any and all other claims or rights of any value whatever, at law or in equity, against any Creditor, third party, or current or former Insider of the Debtor. The term "Causes of Action" shall not, however, include any claims, obligations, suits, judgments, damages, rights, remedies, Causes of

Action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the Plan or any Final Order of the Court.

15)    **Chapter 11 Trustee** shall mean R.W. Cuthill, Jr. in his capacity as that certain Chapter 11 Trustee appointed in connection with the Case by order of the Court entered on or about March 13, 2001, or any Court appointed successors to the Original Chapter 11 Trustee.

16)    **Claim** shall mean any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to any equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

17)    **Class** shall mean any class into which Claims or Interest are classified under the Plan.

18)    **Class 1 Claim, Class 2 Claim, Class 3 Claim, etc.,** shall mean a specific Class into which Claims or Interests are classified under Article II of the Plan.

19)    **Code** shall mean the United States Bankruptcy Code, 11 U.S.C. §101, *et seq.*, and any amendments thereof.

20)    **Committee** shall mean the Official Committee of Unsecured Creditors appointed in this Case by the Office of the United States Trustee on February 20, 2001, pursuant to Code §1102(a). For all periods after the Effective Date,

references in the Plan to the Committee shall be deemed to be references to the Steering Committee.

21)   **Confirmation** shall mean the process leading to and including the entry of the Confirmation Order pursuant to Code § 1129.

22)   **Confirmation Date** shall mean the date of entry of the Confirmation Order by the Court.

23)   **Confirmation Order** shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of the Code.

24)   **Convenience Class** shall mean the Class of Allowed Unsecured Claims each of whom holds an Allowed Unsecured Claim in amount of $500 or less together with any holder of Allowed Unsecured Claims in excess of $500 who elect to reduce the amount of all of his or her Allowed Unsecured Claims to $500 in the aggregate to qualify for the treatment set forth below offered to holder of Allowed Convenience Class Claims.

25)   **Court** or **Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Case is pending together with any court having jurisdiction to hear appeals in certiorari proceedings from that bankruptcy court to the extent any such appeals are taken in connection with the Case.

26)   **Creditor** shall have the same meaning as set forth in Code § 101(1).

27)   **Creditors' Trust** shall mean that certain grantor trust established in the United States pursuant to the terms of the Plan and the Creditors' Trust Agreement.

The Steering Committee shall act as the trustee of the Creditors' Trust, the Liquidating Company shall be the grantor of the Creditors' Trust, and the holders of Allowed Claims shall be the Creditors' Trust's beneficiaries.

28) **Creditors' Trust Agreement** shall mean that certain trust agreement to be prepared in conformity with the terms of the Plan which shall, in conjunction with the Plan, govern the internal organization of the Steering Committee, and other matters. In the event of a conflict between the Plan and the Creditors' Trust Agreement, the Plan shall govern in all instances. The Creditors' Trust Agreement shall appoint the Steering Committee as the trustee of the Creditors' Trust and shall designate the holders of Allowed Claims against the Estate as the Creditors' Trust's beneficiary with each such holder's interest in the Creditors' Trust being proportional to such holder's share of the total amount of Allowed Claims. The Creditors' Trust, through its trustee, shall be responsible for evaluating the performance of the President and the Director, and if, appropriate, replacing such entities as provided for in the Plan. The Creditors' Trust, through its trustee, shall also be responsible for updating Holders of Allowed Claims on the status of Case and for verifying any information obtained from entities seeking to settle any dispute or claim with the Liquidating Company or Chapter 11 Trustee. The beneficiaries of the Creditors' Trust will receive payments from the Creditors' Trust only after their Allowed Claims in the Case have been paid in full as provided for in the Plan.

29) **Debtor** shall have the same meaning as Evergreen for all periods after the Petition Date. For purposes of the Plan, any references to the Debtor in

connection with actions which must be taken shall be deemed to be references to the Chapter 11 Trustee (or any successor in interest) or the Steering Committee, as appropriate.

30) **Director** shall mean the sole director of the Liquidating Company. The initial Director shall be Cuthill.

31) **Disclosure Statement** shall mean the Disclosure Statement approved (or to be approved) for distribution by the Court pursuant to Code §1125 together with any amendments or modifications thereto.

32) **Disputed Claim** shall mean a Claim against the Debtor which is not an Allowed Claim and which has not been disallowed by a Final Order of the Court.

33) **Effective Date** shall mean a date which is the later of the date occurring eleven (11) days after the Confirmation Date provided that no appeal is taken of the Confirmation Order in the previous ten (10) days, the date upon which any appeal of the Confirmation Order is finally resolved by a court of competent jurisdiction, or the date upon which the last of the Conditions Precedent has been met as provided for in the Plan.

34) **Evergreen** shall mean Evergreen Security, Ltd., which shall refer to Evergreen Security, Ltd. for any pre-petition periods, to Evergreen Security, Ltd. as a debtor-in-possession under the Code for the period from the Petition Date through the Effective Date, and to Evergreen Security, Ltd. as the Liquidating Company for all periods of time after the Effective Date.

35)    **Extraordinary Income** shall mean all funds of Evergreen received after the Petition Date including, without limitation, any funds recovered in connection with (a) any and all legal actions, or threatened legal actions, commenced pursuant to Code §§ 541 through 554 or pursuant to comparable provisions of the laws of any jurisdiction, whether federal, state or foreign; (b) any and all Causes of Actions or threatened legal actions based on theories of fraud, embezzlement, civil theft, fraudulent misrepresentation, negligent misrepresentation, breaches of fiduciary duty, violations of the Racketeer Influenced and Corrupt Organizations Act, or any other business tort; (c) any and all Causes of Action pertaining to the securities laws of any jurisdiction; and (d) any restitution payments made to the Chapter 11 Trustee or the Liquidating Company in connection with criminal prosecutions of any Person having connections to Evergreen. Extraordinary Income includes not only actual recoveries from legal proceedings but also any funds paid to settle such legal proceedings, whether or not any legal proceedings have been filed. Extraordinary Income shall only be used as provided for in the Plan. Since the Debtor is no longer engaged in its ordinary business operations, all income received by the Debtor after the Petition Date will be Extraordinary Income.

36)    **Extraordinary Income Account** shall mean the one or more accounts established by the Liquidating Company for the benefit of Debtor's creditors with Allowed Claims; the President shall be the only authorized signatory on the Extraordinary Income Account. All Extraordinary Income recovered pursuant to this Plan shall be deposited in such accounts until distributed to creditors or used to pay Extraordinary Income Expenses or other expenses approved for payment by the Court, all

as provided for herein. All such accounts shall be interest bearing except that the Liquidating Company may maintain a single non-interest bearing Extraordinary Income Account from which disbursements are made if maintaining such account will, in the judgment of the President, result in lower fees being assessed against the Extraordinary Income Account.

37)    **Extraordinary Income Expenses** shall mean all expenses, including, without limitation, professional fees, incurred by the President, Liquidating Company, or the Steering Committee after the Effective Date pursuant to the Plan to recover Extraordinary Income for the benefit of the Estate or otherwise to administer the Estate for the benefit of its creditors.

38)    **Final Payment** shall mean the final payment authorized by the Steering Committee and to be made to holders of Allowed Class 5 Claims on or about the Termination Date.

39)    **Final Order** shall mean an Order or judgment of the Court which is no longer subject to appeal certiorari proceedings and as to which no appeal or certiorari proceeding is pending.

40)    **Holders of Allowed Claims** shall mean all persons or entities holding Allowed Claims against Evergreen.

41)    **Impaired Class** shall mean any Class whose members are holders of Claims or Interests which are impaired within the meaning of Code § 1124.

42)   **Insider** shall have the same meaning as set forth in § 101(31) of the Code and shall include, without limitation, all present and former equity holders, officers, or directors of the Debtor.

43)   **Interest** shall mean any outstanding share or shares of common stock, a warrant for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, beneficial interest, or other equity instruments in the Debtor.

44)   **Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Committee, the Steering Committee, the Chapter 11 Trustee, the Liquidating Company, or any other party with standing to bring such a challenge.

45)   **Liquidating Company** shall refer to the same entity as the term "Debtor" for all periods following the Effective Date and shall be deemed to have the same meaning as "Debtor" for all periods prior to the Effective Date for purposes of interpreting the Plan. The Liquidating Company shall remain the same legal entity as the Debtor, i.e., the company incorporated in the British Virgin Islands and known as Evergreen Securities, Ltd. The Liquidating Company shall have only a single officer (unless additional officers are required for it to pursue the recovery of Extraordinary Income as provided for herein) who shall be the President and a single director (unless additional officers are required for it to pursue the recovery of Extraordinary Income as provided for herein) who shall be the Director.

46) **Order** shall mean a determination, decree, adjudication or a judgment issued or entered by the Court.

47) **Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims as provided for herein.

48) **Payment Date** shall mean any date upon which Payments are made pursuant to the Plan.

49) **Person** shall mean an individual, corporation, exempt companies, limited liability companies, partnership, joint venture, trust, estate, unincorporated organization or a government or agency or political subdivision thereof.

50) **Petition Date** shall mean January 23, 2001, the date on which Debtor filed a voluntary petition for relief under Chapter 11 of the Code.

51) **Plan** shall mean this Chapter 11 plan of reorganization, as amended or modified in accordance with the terms hereof and with the Code and Rules.

52) **President** shall mean the sole officer of the Liquidating Company whose appointment, duties, and removal shall be as provided for herein. The initial President shall be Cuthill.

53) **Prime Rate** shall be the prime rate of interest as published in the *WALL STREET JOURNAL* on the Confirmation Date.

54) **Priority Claim** shall mean a Claim other than an Administrative Claim to the extent such claim is entitled to priority in payment under Code § 507.

55) ***Pro Rata*** **Share** shall mean, with respect to any distribution to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator

of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims and all Reserved Claims in such Class and, if applicable, other Classes, all determined as of the applicable Distribution Date. The term "*Pro Rata* Share" shall also be applied in respect of Administrative Claims, Priority Tax Claims, and Priority Claims as the context requires in the Plan.

56)    **Professional** shall mean, for all periods prior to the Effective Date, any professional employed in the Case with the approval of the Bankruptcy Court pursuant to Section 327 or 1103 of the Code and, for all periods after the Effective Date, any professional employed by the Steering Committee or the Liquidating Company or the President.

57)    **Proof of Claim** shall mean a proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3001, 3002, or 3003.

58)    **Proponents** shall mean the Committee together with Cuthill.

59)    **Released Parties** shall mean those certain parties who obtain Third Party Releases. As of the date of filing this Plan, the only party known to the Proponents who should receive a Third Party Release is the law firm of Windels Marx; however, other parties may also obtain such releases as provided for in the Plan.

60)    **Reserved Claims** shall mean all Disputed Claims as of the applicable Payment Date in the full amount listed in the schedules filed by the Debtor and amended by the Chapter 11 Trustee, unless a proof of claim was timely filed with respect to such Claim, in which case in the face amount of such proof of claim, or unless such

Claim has been estimated by the Bankruptcy Court for the purpose of allowance pursuant to Section 502(c) of the Code, in which case in such estimated amount. Unless any order of the Bankruptcy Court estimating a Claim provides otherwise, the amount so estimated shall apply both for voting purposes and for purposes of computing Reserved Claim. Notwithstanding any other language in the Plan, Reserved Claims shall not include any Disallowed Claims.

61)     **Rule** or **Rules** shall mean the *Federal Rules of Bankruptcy Procedure*, as supplemented by the *Local Bankruptcy Rules* as adopted by the Court.

62)     **Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable non-bankruptcy laws.  A Secured Claim which is challenged by the Chapter 11 Trustee, the President, the Liquidating Company, the Committee, or the Steering Committee shall only be an Allowed Secured Claim to the extent that the underlying security interest is recognized as valid by the Court and the difference in amount between such a creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

63)     **Settlement Dates** shall mean those certain dates upon which settlements between the Chapter 11 Trustee or Liquidating Company, as appropriate, and any defendant or potential defendant which would receive a Third Party Release in connection with such a settlement become final and enforceable.

64)     **Steering Committee** shall mean that committee composed of no less than three (3) and no more than seven (7) members which shall be created and governed

by the terms of the Plan and shall become formally constituted as of the Effective Date or such earlier date upon which the Committee may be dissolved. The initial membership of the Steering Committee shall be as set forth herein. The Steering Committee shall have the duties and responsibilities set forth in the Plan upon the dissolution of the Official Committee of Unsecured Creditors.

65)    **Tax Claim** shall mean an Unsecured Claim for taxes entitled to priority under Code §507(a)(8).

66)    **Termination Date** shall mean the date upon which the Steering Committee determines, in its sole discretion but in consultation with the Liquidating Agent, that all reasonable prospects for recovering Extraordinary Income have been exhausted and provides written notice to that effect to all holders of unpaid Allowed Claims as of the date of that determination.

67)    **Third Party Releases** shall mean those certain releases issued pursuant to this Plan which shall release certain entities (the Released Parties, as defined herein) from any and all liability to the Bankruptcy Estate, the Liquidating Company, and all holders of Claims or Interests for any events or actions which occurred prior to the Petition Date and shall provide those entities with certain injunctive relief to protect them from claims based upon such events or actions.

68)    **Unimpaired Class** shall mean any Class the members of which are the holders of Claims or Interest which are not impaired within the meaning of Code § 1124.

69)    **Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim or an Administrative Claim.

70)    **Windels Marx** shall mean the law firm of Windels Marx Lane & Mittendorf, L.L.P. together with its present and former partners, shareholders, officers, directors, attorneys of counsel, employees, representatives, agents, attorneys, insurers, affiliates, subsidiaries, administrators, predecessor, successor and assign.

III.    **CLASSIFICATION OF CLAIMS AND INTERESTS**

1.    All Claims and Interest treated under the Plan are divided into the following Classes, which shall be mutually exclusive:

2.    Class 1.  Priority Wage, Vacation, and Benefit Claims.  Class 1 consists of all Claims entitled to priority pursuant to Code § 507(a)(3) and § 507(a)(4).  As of the date of filing the Plan, the Proponents do not anticipate the existence of any such Claims.

3.    Class 2.  Priority Tax Claims.  Class 2 consists of the Allowed Secured Claim of the United States of America, Internal Revenue Service ("IRS") or any other taxing authority which relates to any unpaid taxes of Debtor which accrued prior to the Petition Date.  As of the date of drafting this Plan, the Proponents do not anticipate the existence of any such Claims.

4.    Class 3.  Secured Claims.  Class 3 consists of all Allowed Secured Claims other than those classified into Class 2.  As of the date of drafting this Plan, the Proponents are not aware of the existence of any such Claims.

5.      Class 4.   Regulatory Authorities.   Class 4 consists of the Allowed Unsecured Claims of any regulatory authority or any law enforcement authority to the extent that such Claims are, as a matter of law under the laws of the United States or any one of its constituent states, entitled to priority treatment *vis-à-vis* other holders of Allowed Unsecured Claims against the Debtor.   To the extent the holders of Allowed Class 4 Claims are not entitled to such preferential treatment, such holders shall be treated as holders of Allowed Class 5 Claims.

6.      Class 5.   Unsecured Claims (General).   Class 5 consists of the Allowed Claims of all Unsecured Creditors except those Claim holders who elect to be treated as holders of Class 6 Convenience Class Claim holders.

7.      Class 6.   Convenience Claims.   Class 6 consists of the Allowed Unsecured Convenience Claims and the Allowed Claims of any Creditors who elect to reduce their Allowed Claims to five hundred dollars ($500.00).

8.      Class 7.   Equity Interests in Debtor.   Class 7 consists of all Interests in the Debtor.

## IV.   ADMINISTRATIVE EXPENSES.

1)      Any person, including any Professional who has rendered services to Debtor during the course of the Case or otherwise incurred a valid Administrative Expense and who asserts an Administrative Claim arising before the Confirmation Date, including Claims under Code § 503(b), shall, on or before the Administrative Claims Bar Date or such other date as set by the Court, file an application, motion or request, as called for by the Rules, with the Court for allowance of such Claims as Administrative