UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                          )

                                                )        CASE NO. 01-00533-6B1

EVERGREEN SECURITY, LTD.,                       )

                                                         CHAPTER 11

            Debtor.                             )

_____ )


EVERGREEN SECURITY, LTD.'S RESPONSE TO
DEFENDANTS' MOTION FOR RECUSAL AND MOTION TO DISQUALIFY

Evergreen Security, Ltd. ("Evergreen"), pursuant to 11 U.S.C. § 1109, 28

U.S.C. §§ 144 and 455, and Rules 5004 and 7012, Federal Rules of Bankruptcy

Procedure, responds to Mataeka Ltd. *et al.'s* Motion for Recusal, Motion to

Disqualify, Disclosure of all Ex Parte Communications and Revocation of all Prior

Orders (Doc. No. 1508) (the "Recusal Motion"), and in support states:

1.      Mataeka Ltd., Jon M. Knight, J. Anthony Huggins, Atlantic Portfolio

Analytics & Management, Inc. a/k/a APAM, Inc. ("APAM"), and International

Portfolio Analytics, Inc. ("IPA") (collectively, the "Defendants")[1] ask Judge

---

[1] The Defendants are not parties in interest in this bankruptcy proceeding, as that term is defined in § 1109, of
the Bankruptcy Code, and therefore do not have standing in the Evergreen Bankruptcy (as defined in F.N. 2) to
seek the recusal of Judge Briskman or the disqualification of Gronek & Latham. *See In re JMP-Newcor Intern,
Inc.*, 225 B.R. 462, 464-65 (Bankr. N.D. Ill. 1998) (holding that creditor that had previously assigned claim
against debtor, and which was defendant in an adversary proceeding brought by debtor, lacked party-in-interest
standing to challenge debtor's motion for final decree closing bankruptcy case). Although the lack of standing
is sufficient grounds to dismiss the Recusal Motion on its face, Evergreen will still address the substance of the
argument without waiving the right to assert the standing issues.

Briskman to (i) recuse himself from pending proceedings involving the Defendants,[2] (ii) disqualify the law firm Gronek & Latham, LLP ("Gronek & Latham") from representing the Evergreen trustee, R. W. Cuthill, Jr., in the Evergreen Proceedings, (iii) require the disclosure of all *ex parte* communications and filings in the same proceedings, and (iv) revoke all Orders previously entered in the Evergreen Proceedings (approximately 239 Orders).[3]

    2.    In support of the Recusal Motion, the Defendants assert that Judge Briskman should recuse himself and the Court should disqualify Gronek & Latham from the Evergreen Proceedings because:

    a.    In 2004, Judge Briskman conducted an *ex parte* hearing to appoint a receiver as to certain corporate entities related to the defendants in the adversary proceeding styled *In re Advanced Telecommunications Network, Inc., (Advanced Telecommunications Network, Inc. v. Daniel W. Allen and David D. Allen)*, United States Bankruptcy Court, Middle District of Florida,

---

[2]  Those proceedings include the following cases *In re Evergreen Security Ltd.*, United States Bankruptcy Court, Middle District of Florida, Orlando Division; Case No. 01-533-6B1 (the "Evergreen Bankruptcy"); *In re Evergreen Security Ltd.(R.W. Cuthill, Jr., Trustee, v. Mataeka Ltd. et al.)*, United States Bankruptcy Court, Middle District of Florida, Orlando Division; Adv. No. 01-232-ABB (the "Mataeka Adversary"); *In re Evergreen Security Ltd.(R.W. Cuthill, Jr., Trustee, v. International Portfolio Analytics Inc. et al.)*, United States Bankruptcy Court, Middle District of Florida, Orlando Division; Adv. No. 03-35-ABB (the "IPA Adversary"); *In re Jon M. Knight*, United States Bankruptcy Court, Middle District of Florida, Orlando Division; Case No. 06-1547-ABB (the "Knight Bankruptcy"); *In re J. Anthony Huggins*, United States Bankruptcy Court, Middle District of Florida, Orlando Division; Case No. 06-1546-ABB (the "Huggins Bankruptcy"); *In re Atlantic Portfolio Analytics & Management, Inc.*, United States Bankruptcy Court, Middle District of Florida, Orlando Division; Case No. 06-1549-ABB ("APAM Bankruptcy"), and any contested matters in which the Defendants are parties (collectively, the "Evergreen Proceedings").

[3]  It should be noted that the Court does not have jurisdiction to grant the requested relief as to the Mataeka Adversary Proceeding. The pending appeal of the Mataeka Adversary has divested this Court of jurisdiction in that case.

2

Orlando Division; Adv. No. 03-122-KSJ (the "ATN Adversary"). Counsel for the ATN Adversary defendants (or the defendants themselves) apparently filed a complaint in Eleventh Circuit Court of Appeals complaining of Judge Briskman's conduct in that hearing and the Defendants believe that, as a result, there is an Eleventh Circuit "investigation" pending against Judge Briskman (the "Complaint Proceeding").

        b.      Mr. Shuker submitted forty-five pages of proposed findings during the pendency of the Mataeka Adversary when the Court asked the parties to limit their proposed findings to fifteen pages. The Defendants assert that the Court incorporated parts of Mr. Shuker's forty-five page proposed findings in the findings of fact and conclusions of law which the Court ultimately issued.

        c.      The Court asked Mr. Shuker to submit, *ex parte*, proposed orders on discovery motions in the Huggins Bankruptcy and the Knight Bankruptcy.

3.      In addition to the reasons stated above, the Defendants seek to disqualify Mr. Shuker because:

        a.      Mr. Shuker argued that civil contempt and incarceration would be appropriate remedies for failure to comply with a turnover proceeding in a hearing in both the Knight Bankruptcy and the Huggins Bankruptcy and after the hearing Mr. Shuker allegedly reiterated that position directly to Knight and Huggins.

b.  Mr. Shuker threatened to file a bar grievance against opposing counsel during a contentious deposition.

I.  **Summary of the Argument.**

4.  Defendants' Recusal Motion should be denied because:

a.  The motion is untimely because the Defendants knew of the facts upon which the Recusal Motion is grounded for months before they filed the motion; they filed the motion only after multiple losses in hearings before Judge Briskman.

b.  Judge Jennemann already issued an opinion in the ATN Adversary finding no impropriety as to Judge Briskman's conduct of the ATN Adversary. *If* there is an investigation pending in the Eleventh Circuit because of Complaint Proceeding, Defendants provide no reason to believe the Eleventh Circuit will reach a different conclusion than Judge Jennemann.

c.  The forty-five page proposed findings inadvertently submitted by Mr. Shuker in the Mataeka Adversary was an error due to Mr. Shuker's lack of recollection of Judge Briskman's fifteen page limitation, which Mr. Shuker promptly corrected upon learning of his mistake. However, any fact or conclusion of law in the Mataeka Judgment which are similar to findings of fact or conclusions of law contained within the forty-five page proposed findings, are also included in the findings of fact or conclusions of law which Mr. Shuker subsequently submitted.

4

d.     As a matter of law, there is nothing inappropriate about a Court making an *ex parte* request to a prevailing attorney to prepare a proposed order. Moreover, in the case of the discovery orders, Judge Briskman did not enter the orders which Mr. Shuker submitted.

e.     Mr. Shuker did not violate any Florida Bar Rule of Professional Conduct by advising counsel for Huggins[4] that he would ask the Court to hold Huggins in civil contempt if Huggins did not comply with any potential future Court orders. Nor did Mr. Shuker violate any Rule of Professional Conduct by advising counsel for Knight that it was improper to interrupt a deposition while a question was pending unanswered, and that if the lawyer did interrupt the deposition, during which time Mr. Shuker reasonably believed the question and answer would be discussed, Mr. Shuker would file a grievance against the Bar.[5]

f.     In short, the ATN Adversary is old news and Judge Briskman's conduct in that proceeding has been analyzed and vindicated. The remaining grounds relied on by Defendants do not amount to misconduct, and

---

[4] Mr. Shuker does not agree that he made such statements to either Knight or Huggins, personally. Mr. Shuker does concede that he had a discussion with Mr. Spradley about the potential ramifications of a failure to turn over property pursuant to a Court order.

[5] The movants also argue that Mr. Shuker threatened to have Scott Spradley arrested for trespassing before a deposition in Mr. Shuker's office. The movants argue that the threat violated Rule 4-3.4(g), Florida Bar Rule of Professional Conduct. Even if the allegation were true (and it is not), the movants have not established that the alleged threat was made to "obtain an advantage in a civil matter" in violation of Rule 4-3.4(g). Mr. Shuker's alleged threat to have Mr. Spradley arrested therefore is not a basis for disqualifying Gronek & Latham, especially since Mr. Shuker ultimately allowed Mr. Spradley to attend the deposition.

Defendants' motion itself evidences the unfortunate contentiousness of the Evergreen proceedings.

## II.     Jurisdiction and Venue.

5.      This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 455, 1334 and 157.

6.      Venue is proper in this district under 28 U.S.C. § 1409.

7.      This Response and the Recusal Motion constitute a core proceeding pursuant to 28 U.S.C. § 157. *See In re Betts*, 143 B.R. 1016, 1022 (Bankr. N.D. Ill. 1992).

## III.    Procedural and Factual Background.

### A.     The Evergreen Bankruptcy:

8.      On January 23, 2001, Evergreen filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code ("Petition Date").

9.      Pursuant to an order entered on March 14, 2001, the Court appointed R.W. Cuthill, Jr. as the Chapter 11 Trustee of Evergreen.

10.     On June 18, 2004, the Court entered an order confirming ("Confirmation Order") the Chapter 11 Plan of Reorganization as Modified submitted by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors ("Plan") (Doc. No. 1146).  Pursuant to the terms of the Plan and the Confirmation

Order, all rights and powers vested in the Chapter 11 Trustee were transferred to the president of Evergreen.

11.     On July 27, 2006, the Defendants filed their Recusal Motion.

B.      The Mataeka Adversary:

12.     On October 30, 2001, Cuthill commenced the Mataeka Adversary by filing a complaint against Mataeka, Knight, Huggins and APAM to recover fraudulent transfers and to pierce the corporate veil between the defendants (the "Mataeka Complaint").

13.     Trial of the Mataeka Adversary Proceeding took place on June 8, 9, 16, and 17, October 31 and November 7 and 8, 2005. ("Mataeka Trial"). On June 20, 2005, prior to the conclusion of the Mataeka Trial, the Court requested the parties to submit findings of fact and conclusions of law not to exceed fifteen pages.

14.     On July 18, 2005, Evergreen submitted proposed findings and conclusions to the Court. (the "July Findings" or "*Ex Parte* Submission"). On July 18, 2005, Mataeka, Knight, Huggins and APAM also submitted proposed findings and conclusions to the Court. Counsel for the Defendants' transmittal letter to the Court acknowledged that the parties were submitting proposed findings *ex parte* and never objected to that procedure.

15.     On October 10, 2005, during the deposition of the Evergreen's expert, Richard Sandow (the "Sandow Deposition"), the Defendants were provided a copy of Evergreen's July Findings. At this time, the Defendants became aware that Evergreen

7

had submitted proposed findings and conclusions in excess of fifteen pages and informed Mr. Shuker of his mistake.

16.    Upon learning the mistake, Mr. Shuker told the Defendants that he would contact Judge' Briskman's Courtroom Deputy and inform her of the inadvertent mistake.

17.    On November 3, 2005, Evergreen submitted a shortened version of the July Findings to the Court (the "November Findings"). Mr. Shuker informed the defendants that he had submitted the November Findings to the Court, but did not provide the November Findings to the Defendants. The Defendants did not object to Mr. Shuker's *ex parte* submission of the November Findings.

18.    In December 2005, after the conclusion of the Mataeka Trial, the Court requested the parties to submit a final version of their proposed findings and conclusions not to exceed fifteen pages.

19.    On December 22, 2005, Evergreen submitted proposed findings and conclusions to the Court in accordance with the Court's direction (the "December Findings"). On December 27, 2005, Mataeka, Knight, Huggins and APAM submitted proposed findings and conclusions to the Court. Again, the Defendants never objected to the parties submitting their final versions of the proposed findings and conclusions on an *ex parte* basis.

20.    On March 22, 2006, the Court entered a Judgment and Memorandum finding in favor of Evergreen. ("Judgment") (Mataeka Adv. Doc. Nos. 87, 88).

21.   On March 28, 2006 Mataeka, Knight, Huggins, and APAM filed a notice of appeal of the Judgment. (Mataeka Adv. Doc. 91).   Mataeka, Knight, Huggins, and APAM did not seek to stay the Judgment.   On June 27, the Court transmitted the record on appeal to the District Court. (Mataeka Adv. Doc. 145).

22.   Between March 22, 2006 (the date of the Judgment) and July 27, 2006 (the date of the Recusal Motion), the movants never asserted that Gronek & Latham's submission of the forty-five page July Findings was a basis to recuse Judge Briskman or disqualify Gronek & Latham.

C.   The IPA Adversary:

23.   On January 24, 2003, Cuthill commenced the IPA Adversary against IPA, Knight, Huggins, and APAM to recover fraudulent transfers and damages for negligence, negligent misrepresentation and breach of contract and to pierce the corporate veil between the defendants.

24.   On June 30, 2005, Gray Robinson and Peter R. Ginsberg on behalf of IPA, Knight, Huggins, and APAM filed an answer, affirmative defenses and counterclaim.

25.   On July 12, 2005, Cuthill filed his Answer to the IPA Counterclaim.

D.   The Knight and Huggins Involuntary Bankruptcies:

26.   On June 28, 2006, Evergreen filed involuntary petitions for relief under Chapter 7 of the Bankruptcy Code against Knight and Huggins (the "Involuntary Petitions").

27.     On July 11, 2006, Gray Robinson and Peter R. Ginsberg, representing both Knight and Huggins, filed answers and affirmative defenses to the Involuntary Petitions.

28.     On July 12, 2006 (Wednesday), the Court appointed Interim Trustees in the Knight Bankruptcy and in the Huggins' Bankruptcy pursuant to 11 U.S.C. § 303(g) and § 701, and Bankruptcy Rule 2001(a) (the "Interim Trustee Orders"). The Interim Trustee Orders were not appealed and became final orders on July 22, 2006.

29.     On July 13, 2006 (Thursday), Mr. Shuker contacted counsel for Knight and Huggins for the purposes of consensually exchanging discovery relating to the final evidentiary hearings on the Knight and Huggins Involuntary Petitions on a shortened discovery schedule.

30.     On July 14, 2006 (Friday), counsel for Knight and Huggins informed Mr. Shuker that Knight and Huggins would not agree to expedited discovery.

31.     On July 17, 2006 (Monday), Evergreen served Knight and Huggins with requests to produce documents (the "Discovery Requests") and filed emergency motions to compel production of documents and to expedite discovery (the "Discovery Motions") (Knight Doc. 14; Huggins Doc. 14).

32.     On July 18 (Tuesday), the Courtroom Deputy contacted Mr. Shuker's office and attempted to schedule hearings on the Discovery Motions. The Courtroom Deputy later called Mr. Shuker's office for the second time on July 18, and asked Mr.

Shuker to submit a proposed order granting the Discovery Motions. (the "Proposed Discovery Orders") (Exhibit A).

33.    The Court did not enter the Proposed Discovery Orders. Rather, on July 19, 2006 (Wednesday), the Court entered its own order granting the Discovery Motions ("the Discovery Orders") which required all parties to "provide opposing counsel all exhibits and evidence to be offered at the hearing and qualifications and scope of testing of any expert witnesses" on or before Monday, July 24, 2006.

34.    On July 26, 2006, the Court began final evidentiary hearing on the Involuntary Petitions.    However, Knight and Huggins did not complete the presentation of their affirmative defenses to the Involuntary Petitions and the Court adjourned the hearing. No continued trial date has been set by the Court.

## IV.    The Recusal Motion Should be Denied.

A.    The Recusal Motion is untimely.

35.    Bankruptcy Rule 5004(a) provides that a motion to disqualify a bankruptcy judge "shall be governed by 28 U.S.C. § 455."

36.    Section 455 provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned . . . He shall also disqualify himself . . . where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" *28 U.S.C. § 455.*

37.     The procedure for requesting that a judge disqualify himself is set out in

28 U.S.C. § 144, which states as follows:

> Whenever a party to any proceeding in a district court
> makes and files a timely and sufficient affidavit that the
> judge before whom the matter is pending has a personal
> bias or prejudice either against him or in favor of any
> adverse party, such judge shall proceed no further
> therein, but another judge shall be assigned to hear such
> proceeding.
>
>                           28 U.S.C. §144; *see also Liteky v.*
>                           *United States*, 510 U.S. 540, 548
>                           (1994).[6]

38.     The burden of proof to establish a ground to disqualify a presiding judge

is on the moving party. *In re Betts*, 165 B.R. 233 (Bankr. N.D. Ill. 1994). A high

threshold is required to satisfy the standard for bias and partiality disqualification

motions. *See Henkel v. Lickman (In re Lickman)*, 284 B.R. 299, 307 (Bankr. M.D.

Fla. 2002)(citing *Liteky*, 510 U.S. at 558). A judge should be disqualified "only if it

appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-

minded person could not set aside when judging the dispute." *Id.*

39.     Cases construing Sections 144 and 455 have uniformly held that a

motion to recuse must be made timely and at the "earliest possible moment" after

obtaining information of possible bias based on extrajudicial sources rather than facts

---

[6] Although the Defendants attached an affidavit of Jon M. Knight to the Recusal Motion, the affidavit does not
pertain to any conduct or action either exhibited or undertaken by Judge Briskman. Accordingly, the Recusal
Motion should be denied because it fails to comply with the requirements of 28 U.S.C. § 144.

arising in the context of the very proceeding presided over by the judge. *See In re Cooke*, 160 B.R. 701 (Bankr. D. Conn. 1993); *see also Planned Parenthood of Southeastern Pennsylvania v. Casey*, 812 F. Supp. 541 (E.D. Penn. 1993).

40.     Many courts require that motions brought under 28 U.S.C. § 455 be filed in a timely manner, notwithstanding the lack of a specific statutory provision, due to policy considerations, such as preventing litigants from waiting until an adverse decision has been rendered before moving to disqualify the judge, as is the case in the instant proceeding. *See Home Design Services v. Park Square Enterprises* 2006 WL 300607, *2 (M.D. Fla. Feb. 8, 2006); *see also Summers v. Singletary* 119 F.3d 917, 920 (11th Cir. 1997). In fact, "all circuits that have considered the question...agree that a party may not hold back 'a recusal application as a fall back position in the event of adverse rulings on pending matters." *Home Design Services* 2006 WL 300607 at *3.

41.     A motion brought pursuant 28 U.S.C. § 455 is timely if it is brought "at the earliest moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Id.* "Certainly, where the facts are known before a legal proceeding is held, waiting to file such a motion until the court has ruled against a party is untimely." *Summers*, 119 F.3d at 920; *see also, U.S. v. Slay*, 714 F.2d 1093, 1094 (11th Cir. 1983).

42.     In the instant case, the Recusal Motion, which was filed on July 27, 2006, is untimely because: (i) the Defendants had knowledge of the *Ex Parte*

13

Submission (the forty-five page proposed findings) in October, 2005, prior to the conclusion of the Mataeka Trial; and (ii) upon information and belief, counsel for the Defendants learned about the ATN Adversary and the Complaint Proceeding in April, 2006, three months prior to the filing of the involuntary petitions in the Knight Bankruptcy, the Huggins Bankruptcy (collectively the "Knight and Huggins Involuntary Bankruptcy Proceedings") and the APAM Bankruptcy.

43.    On October 10, 2005, during the Sandow Deposition, Mr. Ginsberg and Spradley of Gray Robinson learned that the *Ex Parte* Submission submitted by Evergreen exceeded the fifteen page limitation set by the Court. At that time, and up until the filing of the Recusal Motion, nine months later, the Defendants made no objection with respect to the *Ex Parte* Submission. Instead the Defendants proceeded with the Mataeka Trial, which reconvened on October 31, 2005, with the expert testimony of Mr. Sandow.

44.    The Defendants did not raise the alleged *"ex parte* communication with the Court"* when the Mataeka Trial was completed, when a decision was rendered in favor of Evergreen, or even when Evergreen began collection on the Judgment entered in the Mataeka Adversary Proceeding.  The first time the Defendants raised the alleged *"ex parte* communication with the Court"* was in the Recusal Motion, which was filed on July 27, 2006, approximately *ten months* later.

45.    As the Eleventh Circuit put it:

> In other words, they made a carefully thought out, coldly calculated, eyes open decision not to raise the issue and instead to gamble on winning anyway. The recusal provision was intended to be a shield, not a sword. An issue involving recusal cannot be used as an insurance policy to be cashed in if a party's assessment of his litigation risks turns out to be off and a loss occurs.

> *Bivens Gardens Office Building, Inc. v. Barnett Banks of Florida,* 140 F.3d 898, 913 (11th Cir. 1998).

46.    In addition, upon information and belief, counsel for the Defendants learned in April of this year of the ATN Adversary and the Complaint Proceeding. However, the Defendants chose not to raise the issue of alleged partiality until they filed the Recusal Motion on July, 27, 2006, despite the numerous following opportunities:

a.    On June 28, 2006, Cuthill commenced the Knight and Huggins Involuntary Bankruptcy Proceedings and involuntary proceedings against APAM. Judge Briskman was assigned to each of the involuntary proceedings. None of the Defendants objected to the assignment of Judge Briskman to the involuntary proceedings.

b.    On July 11, 2006, the Defendants filed answers in each of the involuntary proceedings without objecting to the assignment of Judge Briskman as the presiding judge and/or filing a Section 455 motion.

     c.     The motions to appoint an interim trustee were filed in the Knight and Huggins Involuntary Bankruptcy Proceedings and a contested hearing was held before Judge Briskman on the interim trustee motions and the Defendants did not object to the assignment of Judge Briskman as the presiding judge and/or file a Section 455 motion.

     d.     On July 12, 2006, the Court appointed an Interim Trustee in the Knight and Huggins Involuntary Bankruptcy Proceedings and the Defendants did not object to the assignment of Judge Briskman as the presiding judge and/or file a Section 455 motion.

     e.     On July 26, 2006, Judge Briskman presided over the contested hearings on the Huggins Involuntary Petition and the Knight Involuntary Petition (the hearings had to be continued because the Defendants failed to conclude presentation of their affirmative defenses) and again the Defendants did not object to the assignment of Judge Briskman as the presiding judge and/or file a Section 455 motion during these proceedings.

47.     In fact, despite knowing about the ATN Adversary and the Complaint Proceeding since April 2006, the Defendants decided not to file the Recusal Motion until after an interim trustee was appointed over the Defendants' objection and after the Court overruled the Defendants' motions for directed verdict on the Knight and Huggins Involuntary Petitions.

48.     If Defendants had legitimate and valid concerns regarding the impartiality of Judge Briskman because of the ATN Adversary the Defendants would have or should have filed a motion pursuant Section 455 during the pending Mataeka Adversary Proceeding or when Judge Briskman was assigned to the Knight and Huggins Involuntary Bankruptcy Proceedings.    Instead, the Defendants made a carefully thought out, coldly calculated, eyes open decision not to raise a Section 455 issue of partiality, and to proceed with the Mataeka Trial and to proceed with the contested hearing in the Knight and Huggins Involuntary Petitions, and to use Section 455 as an insurance policy.    For this reason alone, the Recusal Motion is untimely and should be denied.

B.      Judge Jennemann has already determined that the conduct of the ATN Adversary did not require the disqualification of Gronek & Latham.

49.     The Defendants attempt to rely on the *ex parte* hearing in the ATN Adversary, and the events which led up to the adversary proceeding being transferred from Judge Briskman to Judge Jennemann, as grounds for the Recusal Motion. However, the Defendants make factual allegations that have no evidentiary support and are in direct contradiction to either the facts contained within the transcripts filed with the Recusal Motion or the facts set forth in the opinion rendered by Judge Jennemann on the issue of Gronek & Latham's disqualification. *See In re Advanced Telecommunication Network, Inc. (Advanced Telecommunication Network, Inc. v. Daniel W. Allen and David D. Allen)*, 326 B.R. 191 (Bankr. M.D. Fla. 2005).

50.    The Defendants make the following inaccurate characterizations of the conduct and behavior of Judge Briskman and Gronek & Latham in the ATN Adversary:

a.    The Defendants assert that the motion filed by Gronek & Latham on behalf of ATN was violative of the Bankruptcy Code. *See* Recusal Motion p. 4.    However, Judge Jennemann made no such finding of fact in her Amended Memorandum Opinion Denying Defendant's Emergency Motion to Disqualify Opposing Counsel and to Continue Trial (the "ATN Opinion").[7] Judge Jennemann commented that the motion "sought the unusual relief of the appointment of a temporary receiver *pendente lite* over certain corporations allegedly owned or controlled by the Allens," but found that ATN filed the motion "properly seeking an *ex parte* hearing to address their concerns." *In re Advanced Telecommunication Network, Inc.*, 326 B.R. at 192, 196.

b.    The Defendants implied that Judge Briskman inappropriately held an *ex parte* "hearing" in the absence of the parties to the litigation and in the absence of the target companies. *See* Recusal Motion p. 4). To the contrary, Judge Jennemann held that "[a]lthough *ex parte* hearings are disfavored, the facts, as asserted by ATN, would *justify* such a hearing." *In re*

---

[7] The defendants in the adversary proceeding styled *In re Advanced Telecommunication Network, Inc. (Advanced Telecommunication Network, Inc. v. Daniel W. Allen and David D. Allen)* did not appeal the ATN Opinion. Furthermore, Gronek & Latham LLP is unaware as to whether the complaint filed against Judge Briskman with the Eleventh Circuit Court of Appeals pursuant to Addendum Three was initiated by the attorney for the defendants, or the defendants themselves.

*Advanced Telecommunication Network, Inc.*, 326 B.R. at 193, 196 (emphasis added).

       c.     The Defendants state as fact that Judge Briskman and Gronek & Latham plotted "about setting up parties to the litigation for arrest, with the Court providing a healthy dose of counseling to Mr. Shuker about how to accomplish what clearly was a jointly-held agenda." Recusal Motion p. 4).

51.     Here is what Judge Jennemann said about the *ex parte* hearing and the colloquy between Judge Briskman and Mr. Shuker:

> The facts presented in this case are vastly distinguishable from those presented in the *Hobson*, *Kleiner*, and *Wisconsin Steel* decisions [cases cited by the Allen's in support of their motion to disqualify Gronek & Latham]. *Here, the Allens had failed to comply with two prior contempt orders. ATN believed that, given notice, the Allens could take further evasive action.* ATN filed their Emergency Motion properly seeking an *ex parte* hearing to address their concerns. *Ex parte* hearings, while discouraged, are sometimes appropriate. *In this case, the decision to allow ATN to proceed with a hearing without notice to the Allens does not appear improper.* Moreover, the hearing was held on the record. The Allens, although absent from the hearing, received the Emergency Motion as well as a complete transcript of the hearing.
>
> Therefore, the only possible basis for disqualification of ATN's counsel is that the tenor or content of the discussion occurring during this hearing was somehow improper. During the challenged colloquy, the overall theme presented was one of frustration. Both the judge previously presiding over this adversary proceeding and counsel for ATN expressed clear frustration with the Allens' actions. Although some may find the portion of

the discussion relating to anticipated future events beyond the scope of the issues raised by ATN's Emergency Motion, *the conversation does not rise to the level of a specifically identifiable impropriety.*

Furthermore, even if any alleged impropriety occurred, no harm has resulted. No action was taken at the hearing, other than the pleading was withdrawn from public access, but only after the Allens received a copy. ATN shortly thereafter refiled a motion similar to the Emergency Motion as well as the original Emergency Motion (Doc. Nos. 204 and 205). No harm was done that would justify removal of an attorney specifically selected by ATN because *there simply is not cause for public suspicion or obloquy.*

This is not a case, as in *Hobson*, where a criminal lawyer has actual knowledge of a crime. Nor is this the case, as in *Kleiner*, where a lawyer representing a bank in a class action attempts to manipulate the decision of class members to join or opt out of class membership. Lastly, this is not a case, as in *Wisconsin Steel*, where a lawyer ghost writes an opinion for a court. In each of those decisions, the facts were egregious, and the disqualification was necessary to maintain the integrity of the proceeding and the judicial system as a whole. *Such is not the case here.*

Rather, this is a case where parties were vigorously litigating an alleged fraudulent transfer. The Allens, as the holders of the challenged transfer, had refused to comply with earlier court orders, and ATN was concerned they would do so again, if given notice of the Emergency Motion. An *ex parte* hearing was conducted at which no action was taken. Everything discussed or relating to that hearing was soon thereafter made public. *Thus, the Court surmises that the Motion to Disqualify may have been filed more for strategic purposes in an attempt to remove experienced counsel on the eve of trial and not to correct any over arching impropriety or to address any social policy concern.*

Regardless, the Allens have failed to meet the two factor test established by the Eleventh Circuit Court of Appeals in *Hobson.* Disqualification of ATN's attorneys and their law firm is unwarranted.

> *In re Advanced Telecomm. Network, Inc.*, 326 B.R. at 196 (emphasis added).

52.    Given that Judge Jennemann has already scrutinized the conduct of Judge Briskman and Gronek & Latham in the ATN Adversary, and found that the challenged behavior was not a basis to disqualify Gronek & Latham in the ATN Adversary, the Defendants cannot reasonably argue that this same behavior constitutes grounds for the recusal of Judge Briskman and disqualification of Gronek & Latham in a subsequent, unrelated proceeding.

53.    Furthermore, the existence of a pending complaint of judicial misconduct by an unhappy litigant does not automatically obligate the judge who is the subject of the complaint to step down from any case involving the party involved in the complaint. *See In re Mann*, 229 F.3d 657, 658-59 (7th Cir. 2000).[8]  The

---

[8] The Defendants cite the case *United States v. Garrudo*, 869 F. Supp. 1574 (S.D. Fla. 1994) (wherein a district judge from Georgia determined that the original district judge should have recused himself from defendant's criminal case because he was under criminal investigation and the public may perceive him to be biased) for the proposition that the existence of a pending investigation of the presiding judge can on its own constitute grounds for recusal. However, this opinion is not relevant to the instant proceeding. In *Garrudo* decisions, the presiding judge was under a *criminal* investigation and is entirely unrelated to the matters in the instant proceeding. It is offensive to raise the allegations which have *supposedly* been made in the Complaint Proceedings to the level of a criminal investigation. Furthermore, although this opinion was affirmed by a panel of the Eleventh Circuit, that opinion was later vacated when the Circuit granted a rehearing *en banc*. *See United States v. Cerceda*, 139 F. 3d 847, 852-55 (11th Cir. 1998), *vacated*, 161 F. 3d 652 (11th Cir. 1998). Subsequently, the equally split Circuit affirmed the district court holding by operation of law. *See United States v. Cerceda*, 172 F. 3d 806, 811-12 & n.6 (11th Cir. 1999) (en banc) (per curiam) (affirming solely because the court was equally divided but noting that doing so does not necessarily adopt opinion of district court). Therefore, the precedential value of this case is questionable.

Seventh Circuit in *Mann* affirmed the district court's denial of a motion for

disqualification where the appellant had filed a complaint of judicial misconduct

against the presiding judge. The court of appeals indicated it would consider "proof

of bias or partiality (or the appearance of either)" as a basis for disqualification but

held, in its absence, that the trial judge was not obligated to disqualify himself merely

because a complaint of judicial misconduct had been filed against him:

> Mann thinks that the minute she filed the misconduct
> complaint against Judge Andersen, he became obligated
> to step down from any case involving her, but this is not
> correct. She has not cited any rule or decision supporting
> the sweeping idea that a judge must automatically
> disqualify herself from a lawsuit simply because a
> disgruntled litigant currently alleges (or has previously
> alleged) judicial misconduct. Indeed, if that were the
> rule, litigants displeased with Judge A's adverse rulings
> could easily manipulate the system by filing a
> misconduct complaint, thereby disqualifying Judge A
> from hearing the case, in the hopes that the case would
> then be assigned to Judge B who might be more
> sympathetic to their cause.

*In re Mann* at 658.

54.    In the instant case, the Defendants contend that the mere existence and

non-disclosure of the Complaint Proceeding requires Judge Briskman recuse himself

from all of the Evergreen Proceedings. However, Judge Briskman was under no

obligation to, and was in fact specifically precluded from disclosing the Complaint

Proceeding. *See* Rules of the Judicial Counsel of the Eleventh Circuit Governing

Complaints of Judicial Misconduct or Disability, Addendum Three, Rule 16.[9]

      C.     Mr. Shuker's submission of proposed findings in excess of the Court's page limitation is not a reason to recuse Judge Briskman or disqualify Gronek & Latham.

    55.    The Defendants assert that Gronek & Latham engaged in inappropriate *ex parte* communication with the Court by submitting the *Ex Parte* Submission, which was in excess of the fifteen page limitation set by the Court. *See* Recusal Motion, pp. 12-15. The Defendants state that the "Court's ultimate Findings of Fact and Conclusions of Law liberally borrowed from a significant portion of the filing, despite its general lack of factual or legal support." *Id* at. 13. However, the Defendants fail to identify a single finding of fact or conclusion of law which the Court adopted from the July Findings which cannot also be found in the November or the December Findings. The only finding of fact set forth in the Court's ultimate Findings of Fact and Conclusions of Law that the Defendants contend is erroneous and without factual support, and which the Defendants also state was articulated in the *Ex Parte* Submission, was in fact not a part of the findings of fact in the *Ex Parte* Submission.

---

[9] Rule 12(f) of the Federal Rules of Civil Procedure, and Rule 7012(f) of the Federal Rules of Bankruptcy Procedure provide that a court may strike any matter that is "redundant, immaterial, impertinent, or scandalous." Pursuant to Rule 16 of Addendum Three, the Complaint Proceeding shall not be disclosed to the public, except under limited circumstances not applicable in the instant proceeding. The disclosure of a judicial misconduct complaint proceeding filed pursuant to 28 U.S.C. §§ 351 and 352, violates 28 U.S.C. § 360(a) and (a)(3). *See Dantzler v. Tangipahoa Parish School Board, et al.,* 2005 WL 1501420 (E.D. La. 2005). Accordingly, the unsupported allegations concerning the alleged Complaint Proceeding are not only inflammatory and counterfactual, but they are immaterial and impertinent to the issues raised by the Recusal Motion and should be stricken.

D.     Mr. Shuker's *ex parte* submission of proposed discovery orders is not a basis to recuse Judge Briskman or disqualify Gronek & Latham.

56.    The Defendants also assert that Gronek & Latham engaged in improper *ex parte* communications with Judge Briskman by submitting the Proposed Knight and Huggins Discovery Orders. *See* Recusal Motion, pp. 10, 15. However, a judge's request to a litigant to draft the court's orders without notice to the opposing party does not invalidate these orders. *See In re Colony Square Company*, 819 F. 2d 272, 276 (11th Cir. 1987).

57.    Such orders will be vacated only if a party can demonstrate that the process by which the judge arrived at them was fundamentally unfair. *See id.* Where the judge has already reached a decision before asking counsel to draft an order, there is no denial of due process. *See id.* at 276-277. In the instant case, Gronek & Latham submitted the orders only after the Court decided to grant the requested relief. Moreover, the Court ultimately did not enter the orders submitted by Gronek & Latham, but rather drafted its own orders.

E.     Mr. Shuker did not violate the Rules of Professional Conduct by explaining to counsel for Huggins the consequences of failing to comply with a court order.

58.    The Defendants, through the affidavit of Knight, state that Mr. Shuker threatened Knight and Huggins with jail if they did not have an acceptable settlement proposal to his office immediately. *See* Recusal Motion p. 9. Furthermore, the Defendants claim this incident constitutes a violation of Florida Rules of Professional

24

Conduct, Rule 4-3.4(g).[10] In (inadmissible) settlement discussions, Mr. Shuker told

counsel for Huggins that if the Court granted the involuntary petitions against them

and required them to repatriate the property held in offshore trusts, Evergreen would

seek all available remedies, including requesting the Court hold Knight and Huggins

in *civil contempt* for violating any order of the Court requiring the repatriation of the

trusts' res. *See In re Lawrence*, 251 B.R. 630 (S.D. Fla. 2000) (upholding bankruptcy

court's incarceration order arising from debtor's failure to comply with a bankruptcy

court order requiring the debtor to turnover proceeds of offshore trust to the estate).

Gronek & Latham did not violate the Rules of Professional Conduct by informing

counsel for Huggins that Evergreen would seek all *civil remedies* available to satisfy

the Judgment.

> F.    Mr. Shuker did not violate the Rules of Professional Conduct by
> explaining the consequences of interrupting a deposition while a
> question is pending.

59.    The Defendants also contend the Mr. Shuker "threatened to file a Bar

grievance against Mr. Knight's counsel when that attorney had objected to Mr.

Shuker's persistent interruption of a deposition witness who was providing responses

that Mr. Shuker did not welcome." *See* Recusal Motion p. 9. The deposition

transcript however, shows that it was Mr. Ginsberg who was attempting to interrupt

---

[10] Although Defendants cite to DR 7-105(A), the correct citation is the Florida Rules of Professional Conduct. Rule 4-3.4(g) reads in pertinent part that a lawyer shall not "present, participate in presenting, or threaten to present *criminal charges* solely to obtain an advantage in a civil matter." (emphasis added).

the deposition of the Defendants' expert in the Mataeka Adversary Proceeding, *while*

*a question by Mr. Shuker was pending.*

> Q. Do you know whether Mr. Knight and Mr. Huggins are the trustee of this trust?
>
> Mr. Ginsberg: Let's take a break.
>
> Mr. Shuker: No. I'm in the middle of a question. You cannot-
>
> Mr. Ginsberg: Don't shake your finger at me. He was in the middle of an answer.
>
> Q. Sit there and answer this question. Answer the question.
>
> Mr. Ginsberg: Let's go.
>
> Mr. Shuker: No.
>
> Q. Answer the question. Answer the question.
>
> Mr. Ginsberg: He was in the middle -
>
> Mr. Shuker: Let it be on the record that I was in the middle of a question. Mr. Ginsberg is stopping it, and he's going to tell him the answer right now off the record.
>
> Mr. Ginsberg: No. First of all, I'm not going to tell him anything. Second of all, he was in the middle of an answer which you interrupted.
>
> Mr. Shuker: Do not point your finger at me.
>
> Mr. Ginsberg: Mr. Shuker, don't shout at me.
>
> Mr. Shuker: I do not consent to this being interrupted. I do not consent to you violating every ethical rule and -

> rule in this state, and I'll file a bar grievance as we go.
> That is so wrong. I'm in the middle of a question.
>
> > *See* Recusal Motion, Exhibit F, pp.
> > 42-44.

60.    Mr. Shuker did not threaten to file a bar grievance against Mr. Ginsberg because the expert witness was "providing answers Mr. Shuker did not welcome." Mr. Shuker reminded Mr. Ginsberg of his right to depose the expert witness free from Mr. Ginsberg's interference. *See Devlin v. Rossman*, 205 So. 2d 346, 347 (Fla. 3rd DCA 1967); *see also Gilbert v. State*, 547 So. 2d 246, 249 (Fla. 4th DCA 1989). Mr. Shuker did not violate Rules of Professional Conduct, Rule 4-3.4 (h) by advising Mr. Ginsberg that his behavior was in violation of the Guidelines for Professional Conduct.[11]

## V.    The Defendants Cannot Meet their Burden to Recuse Judge Briskman.

61.    The Defendants allege the following facts in the Recusal Motion which they contend would lead a *reasonable person* to believe that Judge Briskman's impartiality might be questioned or that he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings: (i) the *ex parte* hearing in the ATN Adversary and the existence and non-disclosure of the pending Complaint Proceeding; and (ii) the alleged *ex parte*

---

[11] "While a question is pending, counsel should not, through objections or otherwise, coach the deponent or suggest answers. Should any lawyer do so, the courts are urged to take *stern* action to put a stop to such practices and to serve as a deterrent to others." *See The Florida Bar Trial Lawyers Section, Guidelines for Professional Conduct*, §E, ¶¶ 8, 9, and 11 (emphasis added).

communications with Gronek & Latham, consisting of the July Findings and the Proposed Discovery Orders in the Knight and Huggins Bankruptcies.

62.     The test traditionally employed to determine whether recusal is mandated under Section 455(a) is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *See Parker v. Connors Steel Co.*, 855 F. 2d 1510, 1524 (11th Cir. 1988) (citation and footnote omitted), *cert. denied*, 490 U.S. 1066 (1989). "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *Liteky*, 510 U.S. at 551 (citing *In re J.P. Linahan, Inc.* 138 F. 2d 650, 654 (2nd Cir. 1943)).

63.     Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp*, 384 U.S. 563, 583 (1966). Almost invariably, judicial rulings are proper grounds for appeal, not for recusal. *See Liteky*, 510 U.S. at 554. In the instant case, the questioned judicial rulings are either: (i) the subject of a pending appeal; (ii) relate to an order for which the Defendants chose not to prosecute an appeal; or (iii) pertain to a matter in which the Defendants failed to appropriately seek redress from the Court.

64.     Furthermore, the Defendants have offered no factual support for their claim of partiality independent of the alleged partiality purportedly arising in the ATN Adversary and Complaint Proceedings. Moreover, both of these matters relate to

factual matters in an unrelated adversary proceeding, an unrelated bankruptcy case and none of the same parties. The Defendants can point to no event in the Evergreen Proceedings that would indicate any judicial aversion, antagonism or hostility against them or their cause. The conclusory statements and specious comparison with the ATN Adversary are untrue and insufficient to show the deep-seated and unequivocal enmity that would render fair judgment impossible under the *Liteky* standard.

65.    The alleged *ex parte* communications with Gronek & Latham, consisting of the July Findings and the Proposed Knight and Huggins Discovery Orders, are not sufficient grounds for the recusal of Judge Briskman. Although the Defendants have alleged without any factual support that the Court adopted the July Findings and the Proposed Knight and Huggins Discovery Orders verbatim and without notice to the opposing party, such actions, even if true (and they are not true), would not by themselves invalidate the Judgment or the Knight and Huggins Discovery Orders. *See Kaspar Wire Works, Inc. v. Leco Engineering & March.*, 575 F. 2d 530, 543 (5th Cir. 1978); *see also Keystone Plastics, Inc. v. C & P Plastics, Inc.*, 506 F. 2d 960, 963 (5th Cir. 1975).

66.    The Defendants must demonstrate that the process by which the judge arrived at the Judgment and the Knight and Huggins Discovery Orders "was fundamentally unfair." *See In re Colony Square Company*, 819 F.2d at 276. In the instant case, Judge Briskman already reached a decision prior to asking Gronek & Latham to draft the Proposed Knight and Huggins Discovery Orders. Judge

Briskman's Judgment in the Mataeka Adversary Proceeding followed a number of hearings where the judge played an active and inquiring role. Judge Briskman was not swayed or influenced by the July Findings; rather Judge Briskman directed both parties to submit proposed Findings of Fact and Conclusions of Law, which he candidly viewed as in lieu of closing argument. *See Transcript, November 8, 2005, Vol. II*, p. 87 (Exhibit B). Judge Briskman did not abdicate his adjudicative role with respect to either the Judgment or the Knight and Huggins Discovery Orders.[12] Accordingly, the alleged *ex parte* communications are insufficient grounds for recusal.

## VI.    The Defendants Cannot Meet their Burden to Disqualify Gronek & Latham.

67.    In *United States v. Hobson*, 672 F. 2d 825, 826 (11th Cir. 1982), Eleventh Circuit adopted a two prong test for attorney disqualification. *See id.* at 828. First, "there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." *Id. (citing Woods v. Covington County Bank*, 537 F. 2d 804, 813 (5th Cir. 1976)). Second, "a court must also find that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case." *Id. (citing Woods*,

---

[12] *See Anderson v. City of Bessemer City, N.C.*, 105 S. Ct. 1504, 1511 (1985)(findings adopted verbatim from litigants given full deference where "court itself provided the framework for the proposed findings"); *see also Fields v. City of Tarpon Springs Fla.*, 721 F. 2d 318, 320-21 (11th Cir. 1983) (factual findings adopted verbatim from litigants affirmed where "district judge had command of the legal issues and the evidentiary proceedings, . . . was an active arbiter of the dispute, [and] did not abdicate his adjudicative role").

537 F. 2d at 813 n. 12). An attorney should be disqualified only when both factors are present. *See id.*

68.    In the instant case, the Defendants allege the following facts in the Recusal Motion which they contend manifest a reasonable possibility that some specific identifiable impropriety did occur and that the likelihood of public suspicion outweighs the social interests which will be served by Gronek & Latham's continued involvement in the aforementioned proceedings: (i) the *ex parte* hearing in the ATN Adversary; (ii) the alleged *ex parte* communications with Judge Briskman, consisting of the *Ex Parte* Submission and the Proposed Knight and Huggins Discovery Orders; and (iii) Mr. Shuker's alleged violations of the Florida Rules of Professional Conduct.

69.    The alleged conduct of Gronek & Latham in the ATN has already been judicially determined not to constitute grounds for disqualification. *See In re Advanced Telecommunication Network, Inc.*, 326 B.R. at 196-97.

70.    The July Findings and the Proposed Knight and Huggins Discovery Orders did not constitute inappropriate *ex parte* communications with the Court by Gronek & Latham.

71.    Finally, Mr. Shuker's conduct and demeanor after the hearings in the Knight and Huggins Bankruptcies and in the deposition in the Mataeka Adversary do not constitute or rise to the level of an "impropriety" mandating disqualification, and do not constitute a violation of the Rules of Professional Conduct. Rather, as characterized by Judge Jennemann, Mr. Shuker's actions reflect more of an attorney

31

frustrated by opposing counsel's continuing obstreperous behavior. Gronek &
Latham did not violate its ethical obligations under the Rules of Professional Conduct
by informing counsel for Knight and Huggins that Evergreen would seek all remedies
available by law to satisfy the Judgment or by advising Mr. Ginsberg that his behavior
was in violation of the Guidelines for Professional Conduct.

72.    The Defendants have not met the two prong test established by the
Eleventh Circuit in *Hobson*. Disqualification of Mr. Shuker and Gronek & Latham is
unwarranted. Accordingly, the Recusal Motion should be denied.

WHEREFORE, Evergreen Security Ltd. respectfully requests this Court enter
an order denying the Recusal Motion.

GRONEK & LATHAM, LLP               SMITH HULSEY & BUSEY
Mariane L. Dorris
Florida Bar No. 0173665
390 North Orange Avenue, Suite 600   By:___ *s/ Allan E. Wulbern*_____
Orlando, Florida 32801                      Stephen D. Busey
(407) 481-5800                              Allan E. Wulbern
(407) 481-5801 (facsimile)
mdorris@groneklatham.com           Florida Bar No. 117790
                                   Florida Bar No. 175511
and                                225 Water Street, Suite 1800
                                   Jacksonville, Florida 32202
                                   (904) 359-7700
                                   (904) 359-7708 (facsimile)
                                   busey@smithhulsey.com
                                   awulbern@smithhulsey.com

                                   Attorneys for R. W. Cuthill, Jr.,
                                   President of Evergreen Security Ltd.

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been furnished electronically or by mail to Scott W. Spradley, Esq. and Maureen A. Vitucci, Esq., Attorneys for Mataeka, IPA, APAM, and Huggins, Gray Robinson, P.A., 301 East Pine Street, Suite 1400, Orlando, Florida 32801; Peter R. Ginsberg Esq., Attorney for Jon M. Knight, Peter R. Ginsberg, P.C., Carnegie Hall Tower, 152 West 57th Street, 24th Floor, New York, New York 10019; Hans C. Beyer, Esq., Saxon Gilmore, *et al.*, P.A., 201 E. Kennedy Blvd., Suite 600, Tampa, FL 33602; and Kenneth Meeker, Esq., Office of the United States Trustee, 135 West Central Boulevard, Suite 620, Orlando, Florida 32801 this 25th day of August 2006.

_s/ Allan E. Wulbern_
Attorney

541298



## CONFIRMATION OF PROPOSED ORDER SUBMISSION
## FOR JUDGE BRISKMAN

Please save your tracking number and/or print this page as confirmation of your submittal.

| | |
|---|---|
| **Tracking Number:** | **AHSKQPSVAX** |
| Submitted By: | Brenda Jennings |
| Submittal Date: | 7/18/06 3:04:44 PM |
| | |
| Case Number: | 06-01547 |
| Order Caption: | Order_Granting_Motion_to_Compel_and_Shorten_Time |

Submit another proposed order for Judge Briskman

Track electronic order submissions for Orlando

Return to the general submission selection page

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                          CASE NO. 6:06-bk-01547-ABB

JON M. KNIGHT,                                  CHAPTER 11
                                                Involuntary Petition
                        Debtor.
_____/

### ORDER GRANTING EMERGENCY MOTION BY R.W. CUTHILL, JR. FOR AN ORDER COMPELLING PRODUCTION OF DOCUMENTS AND SHORTENING THE TIME FOR JON M. KNIGHT TO RESPOND TO CUTHILL'S REQUEST FOR PRODUCTION OF DOCUMENTS

THIS case came on for consideration upon the Motion of R.W.Cuthill, Jr. ("Cuthill") for

an order Compelling Production of Documents and Shortening the Time for Jon M. Knight

("Knight" or the "Debtor") to Respond to Cuthill's Request for Production of Documents, filed

with the Court on July 17, 2006 (the "Motion")(Doc. No. 14) and the Amended Certificate of

Service of the Motion (Doc. No. 16).  In the Motion, Cuthill requests entry of an order: (i)

compelling Knight to produce documents, pursuant to the Federal Rules of Bankruptcy

Procedure 1018, 7034, and 7037; and (ii) shortening the time for Knight to produce the

aforementioned documents, pursuant to Federal Rule of Bankruptcy Procedure 9006(c)(1), in

response to the Request for Production of Documents from the Debtor Jon M. Knight (the

"Document Request"), to require production of the documents two (2) business days prior to the

contested hearing on the involuntary petition.

Upon consideration of the Motion, it is hereby

**ORDERED:**

1.      The Motion is granted.

2.      The contested hearing on the involuntary petition is scheduled on Wednesday, July 26, 2006 at 1:00 p.m., 135 West Central Boulevard, 5th Floor, Courtroom A, Orlando, Florida 32801.

3.      On or before Monday July 24, 2006, the Debtor shall produce to counsel for Cuthill all documents responsive to the Document Request, which was served on the Debtor on July 17, 2006.

        **DONE AND ORDERED**, in Orlando, Florida, this ___ day of July 2006.


                                        _____
                                        **ARTHUR B. BRISKMAN**
                                        United States Bankruptcy Judge


Copies to:

Jon M. Knight, 31025 Quail Hollow Road, Sorrento, Florida 32776;

Evergreen Security, Ltd., c/o R. W. Cuthill, Jr., President, 341 N. Maitland Avenue, Suite 130, Maitland, FL 32751;

R. Scott Shuker, Esq., Gronek & Latham, LLP, 390 N. Orange Avenue, Suite 600, Orlando, FL 32801;

Hans Beyer, Esq., attorney for Official Committee of Unsecured Creditors, Saxon Gilmore et al, 201 East Kennedy Boulevard, Suite 600, Tampa, FL 33602;

Scott W. Spradley, Esq., GrayRobinson, P.A., 301 East Pine Street, Suite 1400, Orlando, FL 32801;

Peter R. Ginsberg, Carnegie Hall Tower, 152 West 57th Street, 24th Floor, New York, NY 10019;

Leigh R. Meininger, Esq., Trustee, P.O. Box 1946, Orlando, FL 32802-1946; and

Office of the United States Trustee, 135 West Central Boulevard, Suite 620, Orlando, FL 32801.



## CONFIRMATION OF PROPOSED ORDER SUBMISSION
## FOR JUDGE BRISKMAN

Please save your tracking number and/or print this page as confirmation of your submittal.

| | |
|---|---|
| **Tracking Number:** | I5KVXZ8PD3 |
| Submitted By: | Brenda Jennings |
| Submittal Date: | 7/18/06 3:02:24 PM |
| | |
| Case Number: | 06-01546 |
| Order Caption: | Order_Granting_Motion_to_Compel_and_Shorten_Time |

Submit another proposed order for Judge Briskman

Track electronic order submissions for Orlando

Return to the general submission selection page

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                    CASE NO. 6:06-bk-01546-ABB

J. ANTHONY HUGGINS,                       CHAPTER 11
                                          Involuntary Petition

            Debtor.

_____/

ORDER GRANTING EMERGENCY MOTION BY R.W. CUTHILL, JR.
FOR AN ORDER COMPELLING PRODUCTION OF DOCUMENTS AND
SHORTENING THE TIME FOR J. ANTHONY HUGGINS TO RESPOND
TO CUTHILL'S REQUEST FOR PRODUCTION OF DOCUMENTS

THIS case came on for consideration upon the Motion of R.W.Cuthill, Jr. ("Cuthill") for

an order Compelling Production of Documents and Shortening the Time for J. Anthony Huggins

to Respond to Cuthill's Request for Production of Documents, filed with the Court on July 17,

2006 (the "Motion")(Doc. No. 14) and the Amended Certificate of Service of the Motion (Doc.

No. 16). In the Motion, Cuthill requests entry of an order: (i) compelling Huggins to produce

documents, pursuant to the Federal Rules of Bankruptcy Procedure 1018, 7034, and 7037; and

(ii) shortening the time for Huggins to produce the aforementioned documents, pursuant to

Federal Rule of Bankruptcy Procedure 9006(c)(1), in response to the Request for Production of

Documents from the Debtor J. Anthony Huggins (the "Document Request"), to require

production of the documents two (2) business days prior to the contested hearing on the

involuntary petition.

Upon consideration of the Motion, it is hereby

**ORDERED:**

1.     The Motion is granted.

2.     The contested hearing on the involuntary petition is scheduled on Wednesday, July 26, 2006 at 1:00 p.m., 135 West Central Boulevard, 5th Floor, Courtroom A, Orlando, Florida 32801.

3.     On or before Monday July 24, 2006, the Debtor shall produce to counsel for Cuthill all documents responsive to the Document Request, which was served on the Debtor on July 17, 2006.

**DONE AND ORDERED**, in Orlando, Florida, this ___ day of July 2006.

_____
**ARTHUR B. BRISKMAN**
United States Bankruptcy Judge

Copies to:

J. Anthony Huggins, 700 Alameda St., Orlando, FL 32804;

Evergreen Security, Ltd., c/o R. W. Cuthill, Jr., President, 341 N. Maitland Avenue, Suite 130, Maitland, FL 32751;

R. Scott Shuker, Esq., Gronek & Latham, LLP, 390 N. Orange Avenue, Suite 600, Orlando, FL 32801;

Hans Beyer, Esq., attorney for Official Committee of Unsecured Creditors, Saxon Gilmore et al, 201 East Kennedy Boulevard, Suite 600, Tampa, FL 33602;

Scott W. Spradley, Esq., GrayRobinson, P.A., 301 East Pine Street, Suite 1400, Orlando, FL 32801;

Leigh R. Meininger, Esq., Trustee, P.O. Box 1946, Orlando, FL 32802-1946; and

Office of the United States Trustee, 135 West Central Boulevard, Suite 620, Orlando, FL 32801.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 01-00533-6B1
ADV. NO.: 01-00232

IN RE:

EVERGREEN SECURITY, LTD.,

Debtor.

NOVEMBER 8, 2005

VOLUME II

TRANSCRIPT OF PROCEEDINGS

HELD BEFORE THE HONORABLE ARTHUR B. BRISKMAN
UNITED STATES BANKRUPTCY COURT

A P P E A R A N C E S:

R. SCOTT SHUKER, ESQUIRE
MARIANE DORRIS, ESQUIRE
MICHAEL FURBUSH, ESQUIRE
Gronek & Latham, P.A.
        Appearing on behalf of R.W. Cuthill
        Chapter 11 Trustee, Plaintiff

SCOTT W. SPRADLEY, ESQUIRE
MAUREEN VITUCCI, ESQUIRE
Gray, Robinson, P.A.
        Appearing on behalf of the Defendants

PETER GINSBERG, ESQUIRE
        Appearing on behalf of the Defendants


REPORTED BY:
Cynthia D. Vachon
Accredited Court Reporters


**EXHIBIT B**

1    She had a baby which is not news in June and so we'll let

2    the deposition come in as is.

3             MR GINSBERG: Your Honor, we didn't examine Ms.

4    Farquharson.

5             THE COURT: I will tell you that I'm going to do

6    this pretty quickly.

7             MR. GINSBERG: I don't think --

8             THE COURT: And if you're not available we're

9    just going to proceed with it and --

10            MR. GINSBERG: And I don't think Mr. Knight will

11   object either in that regard, Your Honor.

12            THE COURT: All right.  So when are you going to

13   let me know?

14            MR. GINSBERG: I'll let you know no later than

15   the morning of November 11th.  I'm going to be in Court

16   November 10th to find out what the trial schedule is.

17            THE COURT: Okay.  Thank you.  And then why

18   don't you check with Mr. Shuker and see if you all can

19   actually tell me what's an agreeable time with the

20   witness and you, too.

21            MR. SHUKER: And are you planning for closings

22   that day?

23            THE COURT: Yes, I'm wrapping this thing up.

24            MR. SHUKER: Okay.

25            MR. GINSBERG: Will Your Honor be asking us to

1     submit post hearing briefs of any sort?

2          THE COURT: Only if you want to.  I think you've

3     got it pretty well briefed and your findings of fact.

4          MR. GINSBERG: I assume we'll need some

5     adjustments since we've had witnesses since those.

6          THE COURT: If you have adjustments you can have

7     adjustments.

8          MR. GINSBERG: With regard to closing argument,

9     I expect to be with Ms. Farquharson in the Bahamas at the

10    time of her testimony so it --

11         THE COURT: Do you want closing arguments?

12         MR GINSBERG: Your Honor, may I speak with Mr.

13    Shuker?

14         THE COURT: I mean, that's why I have the

15    findings of fact.  I don't need closing arguments.

16    That's basically closing argument.

17         MR. GINSBERG: May I discuss with it Mr. Shuker

18    and then also inform chambers on the morning of the 11th

19    about that aspect of this?

20         THE COURT: All right.

21         MR. SHUKER: And, Your Honor, if we could ask

22    Mr. Ginsberg, since he's going to be down there, to bring

23    all three exhibit books, their two and our one, so that

24    she has them in front of her.

25         MR. GINSBERG: Be glad to.

1                    THE COURT: All right.   Thank you all.

2                    MR. SHUKER: Thank you.

3                    MR. GINSBERG: Thank you, your Honor.

4                    MR. SPRADLEY: Thank you, Your Honor.

5                    (Thereupon, the proceedings were concluded.)